KENNETH E. KELLER (SBN 71450)
THOMAS H. SLOAN, JR. (SBN 58322)
LORI L. BEHUN (SBN 202309)
KRIEG, KELLER, SLOAN, REILLEY & ROMAN LLP
114 Sansome Street, 4th Floor
San Francisco, CA 94104
Telephone: (415) 249-8330
Facsimile: (415) 249-8333

Attorneys for Plaintiff
MACROVISION CORPORATION

ENDORSED
FILED
San Francisco County Superior Court
JUL 30 2007
GORDON PARK-LI, Clerk
BY: _____, Clerk

CASE MANAGEMENT CONFERENCE SET

DEC 28 2007 - 9:00 AM

DEPARTMENT 212

IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

IN AND FOR THE COUNTY OF SAN FRANCISCO

| | |
|---|---|
| MACROVISION CORPORATION, a Delaware corporation,<br><br>Plaintiff,<br><br>v.<br><br>MOTOROLA INCORPORATED, a Delaware corporation, and Does 1 through 50,<br><br>Defendant. | Case No.: CGC07-465559<br><br>**COMPLAINT FOR BREACH OF CONTRACT, DECLARATORY RELIEF AND INJUNCTIVE RELIEF**<br><br>**JURY TRIAL DEMANDED** |

1.  Plaintiff Macrovision Corporation (where appropriate "Macrovision" or "Plaintiff") is a Delaware corporation having its principal place of business in Santa Clara, California and with an office of business in San Francisco, California. Macrovision has been at all relevant times the owner of Anti-Copying technology, which may be used to protect video material from unauthorized copying, including in connection with pay-per-view program transmissions.

2.  Defendant Motorola, Inc. (where appropriate "Motorola" or "Defendant") is a Delaware corporation, and doing business throughout the State of California. On information and belief, Motorola's principal place of business is located in Schaumburg, Illinois. Motorola is a purchaser and/or licensee of Anti-Copying technology, designed and developed by Macrovision,

1

including but not limited to Macrovision-enabled integrated circuits for incorporation into set top boxes for pay-per-view program transmission.

3. Macrovision is ignorant of the true names, capacities or business forms of each of the Defendants sued herein as Does 1 through 50, inclusive, and therefore sues said Doe Defendants by such fictitious names. Plaintiff will seek leave to amend the Complaint to allege their true names and capacities once Plaintiff has ascertained them.

4. Plaintiff is informed and believes, and based on such information and belief alleges, that each of the Defendants, including the Doe Defendants, was acting as the agent or representative of each of the other Defendants, and is responsible for and the cause of Plaintiff's losses and damages alleged herein. Plaintiff alleges that Defendants, and each of them, knew of the acts of each of the other Defendants and accepted the benefits flowing from the acts with full knowledge of all material facts, and therefore ratified each of the acts of each other Defendant.

## JURISDICTION

5. This court has jurisdiction over this action as the amount in controversy exceeds Twenty Five Thousand Dollars ($25,000.00).

6. Venue is proper in this Court as the Plaintiff does business within the City and County of San Francisco, significant acts of the Defendant, giving rise to this action for breach of contract, as described herein, occurred within this County, and the Defendant as a foreign corporation doing business in the State of California is subject to jurisdiction in any County within the State of California, including this County.

## FACTUAL ALLEGATIONS

7. Macrovision offers content protection, digital rights management, and software licensing solutions that enable businesses to maximize the value of their digital content and software products. Macrovision owns intellectual property rights, title and interest in and to various anti-copying technology which may be used to protect video material from unauthorized use, including the Anti-Copying technology licensed by Macrovision to Motorola ("the Macrovision Anti-Copying Licensed Technology") pursuant to the agreements described herein.

2

COMPLAINT FOR BREACH OF CONTRACT,
DECLARATORY RELIEF AND INJUNCTIVE RELIEF

8.  Over the years, Macrovision has been granted licenses to many of its patents that cover its Anti-Copying technology.

9.  Macrovision is informed and believes and thereon alleges that at all times relevant herein, Motorola has been and continues to be engaged in the business of providing integrated, end-to-end systems that deliver digital entertainment, information, and communications services over a variety of wired and wireless broadband network architectures.

10. On information and belief, General Instrument Corporation ("GI") was formerly a Delaware corporation having principal place of business in San Diego, California.

The Macrovision - GI Relationship

11. On or about June 4, 1991, Macrovision and GI entered into a license agreement (the "GI License Agreement") by which GI was licensed to use the Macrovision Anti-Copying Licensed Technology. As part of that agreement, Macrovision licensed GI to make, use, and sell products covered by the Macrovision patents referenced therein.

12. The GI License Agreement provided that it would automatically and immediately terminate upon expiration of the patents referenced in the GI License Agreement. When the last of those patents expired, which occurred, the GI License Agreement terminated.

13. Prior to 2000, Motorola and GI were competitors in the sale of pay-per-view products that incorporate anti-copying technology. In or about January of 2000, Motorola acquired GI, and GI became a wholly owned subsidiary of Motorola.

The Macrovision - Motorola Copy Protection License Agreement

14. On or about September 9, 1998, Macrovision and Motorola entered into a confidential Copy Protection Technology License Agreement (the "Motorola License Agreement"), by which Motorola was licensed the rights to incorporate the Macrovision Anti-Copying Licensed Technology into Motorola digital video compression systems in set top boxes, for sale to operators of pay-per-view programming. In particular, Macrovision granted to Motorola the non-exclusive rights to: (a) purchase from authorized suppliers the devices that contain the apparatus for implementing the Process (the "Devices"); (b) incorporate such Devices into

3

Motorola's video decoder and associated software (the "Products") as defined in the Motorola License Agreement; and (c) sell the Products to specified users. The Motorola Licensed Agreement specifically granted to Motorola the rights to incorporate Macrovision–enabled integrated circuits into set top boxes for pay-for-view program transmission and to ship, sell and otherwise distribute such set top boxes, and to practice the patents referenced in the Motorola License Agreement for such purposes.

15. In consideration for these rights, Motorola agreed to pay an "Upfront Fee" and Motorola further agreed to pay a "Product Royalty Fee" of sixty-cents ($0.60) for each unit sold by Motorola incorporating Macrovision's technology. Pursuant to the terms of the Motorola License Agreement, the Product Royalty Fees were and are due within 45 days after the close of each calendar quarter in which such Products have been sold. Furthermore, the Motorola License Agreement specifically provides that any payment not timely shall incur a late charge or interest of eighteen-percent (18%) per annum, from the due date until the date of actual payment.

16. The Motorola License Agreement also requires that Motorola keep records reflecting the number of Products sold, and submit certified quarterly reports to Macrovision in a format detailing the Products sold to end-user consumers and system operators, and the amount of royalty due to Macrovision. The quarterly reports are due no later than forty-five days following the close of the calendar quarter covered by the report, at the same time that the quarterly payment of royalty fees is due.

17. Under the Motorola License Agreement, Macrovision has the further right to audit the Motorola records to certify compliance with the quarterly reporting and payment requirements. If the audit determines that Motorola has understated the amount due, the additional amount due shall be paid within ten days and Motorola shall reimburse Macrovision for the costs incurred in such audit.

18. In the event of a material breach of the Motorola License Agreement by one party, the other party may terminate the agreement upon written notice, with a thirty day period in which the breaching party may remedy the breach. In addition, in the event of an unremedied material

4

COMPLAINT FOR BREACH OF CONTRACT,
DECLARATORY RELIEF AND INJUNCTIVE RELIEF

breach by Motorola, the Motorola License Agreement gives Macrovision the right to notify Motorola's Device suppliers that Motorola is no longer an authorized licensee entitled to purchase and use the Devices.

<u>Motorola Breaches the Motorola License Agreement with Macrovision</u>

14. Beginning in or about 1998, Motorola sold products subject to the Motorola License Agreement, and for a time complied with the requirements of reporting sales and paying royalty fees. While Motorola has continued up to the present time to market and sell products subject to the Motorola License Agreement, in or about mid-2006, Motorola began materially breaching the Motorola License Agreement by failing to submit the required quarterly reports, and by failing to make payment of the royalty fees for such period. Thereafter, and to the present time, Motorola has continued to breach material terms of the Motorola License Agreement by failing to supply timely and accurate quarterly reports, and by failing to make payment of the required royalty fees. Despite repeated written notices of these breaches and demands for cure and payment by Macrovision, Motorola has failed and refused to cure its breaches or to make such payments.

15. The amount of the past royalties due and owing to Macrovision from Motorola under the Motorola License Agreement from July 1, 2006 up to the present, is in excess of $9,000,000.00, plus interest at the rate specified in the Motorola License Agreement. Motorola continues to sell Products and continues to incur an obligation to pay royalty fees, which obligation and duty Motorola continues to ignore.

19. On or about May 31, 2007, Macrovision once again demanded in writing that Motorola pay the past-due royalty amounts, and further gave Motorola written notice of the material breaches, as described herein, and an opportunity to remedy and cure the breaches by payment of past sums due by close of business July 27, 2007 and to acknowledge that it has an ongoing obligation to report sales and to pay royalties under the terms of the Motorola License Agreement. Motorola has not made such payments, has not remedied the material breaches, and thus Macrovision has the right to terminate the Motorola License Agreement and all the rights under it.

20.   The Motorola License Agreement entitles the prevailing party to attorney's fees, reasonable expenses, related litigation and arbitration costs and costs of suit to be paid by the non-prevailing party in any dispute, litigation or arbitration between the parties arising out of or related to the Agreement.

WHEREFORE, Macrovision claims as follow:

### FIRST CAUSE OF ACTION

**(Breach of Written Contract)**

21.   Macrovision realleges and incorporates by reference the allegations in Paragraphs 1 through 20 above, as though fully set forth herein.

22.   Pursuant to the Motorola License Agreement, Motorola owes a royalty to Macrovision of sixty cents ($.60) for each unit sold, shipped or otherwise distributed by Motorola incorporating Macrovision's Anti-Copying Technology and to accurately report the sales of all Products under the Motorola License Agreement.

23.   Macrovision has performed each and every condition, covenant and obligation to be performed on its part, pursuant to the terms of the Motorola License Agreement, except as waived or excused by Motorola, and/or waived or excused by Motorola's breaches of the Agreement.

24.   Macrovision has not excused, waived or otherwise released Motorola from its obligations under the Agreement.

25.   Motorola has failed and refused, and continues to fail and refuse to tender its performance as required by the Agreement, in particular, for failing to provide timely and accurate quarterly reports of sales of Products and failing to pay royalty fees due and owing to Macrovision for the sale of Products from July 1, 2006 to the present, in a sum in excess of $9,000,000.00.

26.   Motorola's breaches of the Agreement are material and without excuse or justification.

27.   As a direct and proximate result of Motorola's breaches of the Agreement described herein, Macrovision has sustained damages for breach of contract in the sums stated above in an amount of approximately $9,000,000.00 and on going, plus interest of 18% per annum as provided

6

COMPLAINT FOR BREACH OF CONTRACT,
DECLARATORY RELIEF AND INJUNCTIVE RELIEF

in the Motorola License Agreement, plus attorneys' fees and costs.

WHEREFORE, Macrovision prays for damages and judgment as set forth below.

## SECOND CAUSE OF ACTION

### (Declaratory Relief)

28. Macrovision realleges and incorporates by reference the allegations in the foregoing paragraphs 1 to 27, as though set forth here in full.

29. An actual and present controversy exists concerning the legal rights and duties of Macrovision and Motorola with respect to the Motorola License Agreement, specifically whether Motorola owes past due and ongoing royalties under the License Agreement, and the amount of such royalties. Macrovision contends that Motorola has materially breached the Motorola License Agreement and that Motorola owes past due and ongoing royalties for the same, along with interest, and Motorola disputes Macrovision's contentions.

30. An actual controversy has arisen between the parties regarding the Motorola License Agreement. A declaratory judgment in this case is necessary and proper as such a judgment would clarify the parties' rights and obligations and eliminate the uncertainty that has been generated with respect to the parties' rights and obligations under the Motorola License Agreement.

31. Accordingly, Macrovision requests that this Court make the following judicial declarations: (1) the Motorola License Agreement is enforceable; (2) Motorola has materially breached the terms and conditions of the Motorola License Agreement; (3) Macrovision has provided the requisite notice and opportunity to cure; (4) Motorola has failed to cure its material breaches, and (5) Motorola owes Macrovision damages for such breaches.

WHEREFORE, Macrovision prays for damages and judgment as set forth below.

## THIRD CAUSE OF ACTION

### (Injunctive Relief)

32. Macrovision incorporates and realleges herein the allegation in Paragraphs 1 through 27 as if set forth in full.

COMPLAINT FOR BREACH OF CONTRACT,
DECLARATORY RELIEF AND INJUNCTIVE RELIEF

33. Pursuant to the terms of the Motorola License Agreement, upon termination due to a material breach by Motorola, Motorola must immediately cease the manufacture and distribution of all products defined in the agreement.

34. The Motorola License Agreement further provides that upon termination due to a material breach by Motorola, Macrovision will be entitled to seek injunctive relief and/or right of possession to enforce its rights under the provision referenced herein, without the necessity of posting a bond or other security. On information and belief, Motorola continues to ship, sell or otherwise distribute products covered by the Motorola License Agreement, including by incorporating Macrovision-enabled integrated circuits into set top boxes.

35. Pursuant to the Motorola License Agreement, Motorola acknowledged and agreed that if it breached the Motorola License Agreement, which it has, as a result of such breach Macrovision may be irreparably harmed and may not have an adequate remedy at law.

36. Motorola has materially breached the terms of the Motorola License Agreement as described herein and has failed to cure such breaches despite written notice by Macrovision.

37. Macrovision has been irreparably harmed by the activities of Motorola as described herein, has no adequate remedy at law upon the termination of the Motorola License Agreement, and will continue to suffer irreparable harm unless the activities of Motorola are enjoined.

38. Macrovision requests a preliminary and permanent injunction from the Court upon a determination that the Motorola License Agreement is terminated enjoining Defendants, and each of them from (1) incorporating Macrovision-enabled integrated circuits into step stop boxes, and (2) shipping, selling, or otherwise distributing such set top boxes.

WHEREFORE, Macrovision prays for damages and judgment as set forth below.

## PRAYER FOR DAMAGES AND RELIEF

As a result of the Defendant's wrongful conduct as alleged herein, Plaintiff prays for judgment against Defendant as follows:

A. That this Court award Macrovision all compensatory, special, and incidental damages directly and proximately resulting from Defendant's wrongful acts;

B. For an accounting and payment of royalties in an amount to be determined at trial;

C. For an award of reasonable attorneys' fees incurred in this action;

D. For an award of Macrovision full costs and expenses incurred in this action;

E. For awardable interest at the contract rate of 18%;

F. For a preliminary and permanent injunction enjoining Defendants and each of them from (1) incorporating Macrovision-enabled integrated circuits into set top boxes; and (2) shipping, selling or otherwise distributing such set top boxes; and

G. For such other and further relief as the nature of this action may require and/or that the Court deems just and proper.

Dated: July 30, 2007                KRIEG, KELLER, SLOAN, REILLEY & ROMAN LLP

By: _____
KENNETH E. KELLER
Attorneys for Plaintiff
MACROVISION CORPORATION

## DEMAND FOR JURY TRIAL

Demand is hereby made for trial by jury on all issues triable to a jury.

Dated: July 30, 2007                KRIEG, KELLER, SLOAN, REILLEY & ROMAN LLP

By: _____
KENNETH E. KELLER
Attorneys for Plaintiff
MACROVISION CORPORATION

COMPLAINT FOR BREACH OF CONTRACT,
DECLARATORY RELIEF AND INJUNCTIVE RELIEF